## Hugh McNeile *v.* Martha Cridland and Ella Cridland, Appellants.

*Evidence—Inadmissibility of post contractual representations in deceit.*

In an action on a contract evidence was properly rejected which was offered in support of alleged representations made by the plaintiff's agent after the contract in controversy had been entered into; such representations even if false would not legitimately tend to establish the defense, which was deceit.

*Appeals—Application for new trial—After-discovered testimony—Discretion of court.*

Applications for new trial based on allegations of after-discovered testimony are addressed to the sound discretion of the trial court, and only in clear cases of abuse of discretion, if ever, is the refusal of the application assignable for error.

*Charge of court—Comments on testimony—Effect of charge as a whole.*

The charge of the court is not open to exception when the effect of its comments, taken as a whole, was to lead the jury to the conclusion, not that the plaintiff's version of a conversation was the more probable, but that his version did not differ, in legal effect, upon the question at issue, from that of the defendant.

It is not error for the trial judge to comment on the testimony of a witness and to call attention to its inherent probability or improbability, provided he does it fairly, and leaves the question of his credibility to the jury.

Where particular instructions are not asked for, and the complaint is that the charge was inadequate or one-sided, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected from the context which qualifies and explains them; if, as a whole, the charge was calculated to mislead, there is error in the record; if not, there is none.

Argued Dec. 14, 1897. Appeal, No. 8, Oct. T., 1897, by defendants, from judgment of C. P. No. 2, Phila. Co., Mar. T., 1893, No. 70, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Sci fa. sur mortgage. Before SULZBERGER, J.

It appears from the evidence that defendants purchased of the plaintiff certain premises in Philadelphia for the sum of $4,400, subject to certain incumbrances, and executed a bond and mortgage for a portion of the purchase money, namely, $1,400 secured on the same, $1,000 to be paid in six months, and $50.00 quarterly thereafter. The agreement of sale made in writing, on February 18, 1890, was as follows:

"Received Philadelphia February 18, 1890, of Miss Martha H. and Ella Cridland the sum of $100 on account of purchase money of premises No. 2220 N. 16th St. 28th Ward sold for the sum of $4,400 subject to a mortgage of $2,500 thereon. Taxes, interest, to be adjusted at date of settlement which is to be made on or before the 25th day of February 1890. The policy of insurance against fire to be paid for by the purchaser less 10 % discount. Terms to be $500 cash, $2,500 first mortgage at 5 3/10, $1,400 second mortgage at 6%, $1,000 to be paid in six months and $50 quarterly. Deed to be made in the name of Miss Martha H. and Ella Cridland.

"$100.

"1305 Butler St.

" F. C. Thomas 1714 S. 8th St. will attend to the convey-
ancing and making settlement at office of building."

At the expiration of six months it was alleged that certain
material defects in the building manifested themselves, and
that the defendants, upon being assured by the plaintiff that
these defects would be remedied, paid the $1,000. Repairs
were not made, and no portion of the balance being paid, suit
was brought upon the mortgage.

At the trial offers were made to prove certain conversations
between defendants and the agent of the plaintiff in which it
was alleged that certain misrepresentations were made by said
agent and which conversations took place on the 25th of Feb-
ruary, 1890. This evidence, upon objection by the plaintiff, was
rejected. [1, 2]

Verdict and judgment for plaintiff for $581.06. Defendants
appealed.

*Errors assigned* among others were (1, 2) In sustaining plain-
tiff's objection to the offers of evidence by defendants of
conversations between plaintiff and defendant subsequent to
February 18, 1890, the date when the agreement of sale was
signed, under which it was alleged that certain misrepresenta-
tions were made by plaintiff's agent; (3) In refusing to grant
a new trial based upon an affidavit of after-discovered evidence.
(4) In its charge to the jury, taken as a whole, by giving prom-
inence to the evidence of the appellee without adequate refer-
ence to evidence in contradiction, which is especially prominent
in the following abstract : " Now the evidence in this case is,
on the part of the Misses Cridland, that they did make the
question of solid ground such a question, and I do not under-
stand Mr. Locker to deny it. Mr. Locker said what was per-
fectly natural, and what appears to bear all the evidence of
truthfulness : ' I deal a great many times in a year ; I have had
many, many transactions since that time, perhaps hundreds.
Now, would it be possible for me truthfully to say that I spoke
to these people on this occasion when I sold perhaps ninety
houses in that one operation alone, and a great many others in
other operations ? ' Well, that impresses one as being a badge
of truthfulness. In short, if he had said that he really remem-
bered every word of the conversation, you might very well ask

yourselves how it is that this man has such a tremendous memory, such a huge memory that in all the lapse of time and with all that multiplicity of transactions, he can still remember every word that everybody had said, and you might doubt the truthfulness of such a story, but here he says, 'I can't say, I know this, that McNeile told me these foundations were solid.   They were excellent, and if anybody asked me about them I said that.'   From the whole of that I think you would be fairly justified in concluding that there was a conversation between the plaintiff and defendant concerning the solidity of the foundation."   (5) In charging the jury as follows : " The concrete covering of the cellar floor serves as a platform which practically bears very little weight.   The space under the cellar wall there bears very much weight, to wit: the weight of the whole house. Now, if a house comes down, they say the joint between the wall and the cellar floor must be broken, that you could not have the walls settling down without breaking the joint between walls and the cellar floor ; and they say, furthermore, that if the settling were uneven so that the four walls would not come down at exactly the same rate, at the same time, there would, moreover, be a fracture of the corners, where one wall would leave the other ; and they say that they examined that place with the greatest care and minuteness, used lights, and made deliberate inspection, and did not find any evidence of such a fracture in either place ; and their professional opinion is, that that condition of affairs being given, it is impossible that there could have been a settling of the foundation.   On this point, you know, Mr. McBride (appellant's witness) is equally positive.   I do not recollect that he was able to point to a particular fracture, but when questioned by me upon that subject, it seemed to me that the emphasis of his condemnation increased, rather than diminished.   He then, I think, spoke about what was the use of discussing minor points ; that the whole block was going down, or something to that effect."   (6) In charging the jury as follows : " If you find that this house has not settled in the foundations ; that the foundation of ground upon which it is, is solid—and in that sense I use foundation and ground as identical, and that the foundation is solid and that the house has not settled by reason of any defect in the founda-

tions—then you are to find a verdict for the plaintiff for the full amount."

*J. H. Brinton*, for appellants.—The crucial point of the defense lies in the misrepresentations made to defendants by plaintiff, or his agent, on the faith of which the premises in question were purchased.

The alleged agreement of February 18, 1890, is at best but an ex parte statement of the plaintiff's conception of the agreement and was signed by his agent and could, therefore, be but binding upon himself and his principal. Such writings and receipts are not to be construed as definitive agreements: Baush v. Railroad, 18 Phila. 392; Horton's Appeal, 38 Pa. 294; Batdorf v. Albert, 59 Pa. 59; Wolf v. Phila., 105 Pa. 25; Grove v. Donaldson, 15 Pa. 128; Bell v. Bell, 12 Pa. 235.

The charge of the court is misleading, and his comments had the effect to minimize the weight of the testimony of defendants' witnesses and, taken as a whole, would leave the impression that the plaintiff's witnesses deserved the greater credibility.

While it is true that the practice of excepting to a charge generally and assigning it as error is not recognized save in exceptional cases, the case at bar seems to comply with the requirements of the exception: Reichenbach v. Ruddach, 127 Pa. 564; Lerch v. Bard, 177 Pa. 197; Herstine v. Railroad Co., 151 Pa. 244.

*H. Gordon McCouch*, for appellee.—As the gist of the defense was alleged false representations inducing the making of the contract, it is apparent that no evidence could have been received as to representations made after the contract was closed, and in such ruling of the court there was no error.

The overruling of a motion for a new trial is not a proper subject for an assignment of error. The discretion of the court is not reviewable here: Howser v. Com., 51 Pa, 332; Moock v. Conrad, 155 Pa. 586; DeGrote v. DeGrote, 175 Pa. 50.

The charge of the court, as a whole, was entirely fair; in effect, the court charged the jury that representations were made and relied on, and left it to them to decide whether they

were true or false. Their verdict settles that question in favor of the appellee, and while the appellants may feel dissatisfied with the finding they have no just cause to complain of their treatment by the court.

OPINION BY RICE, P. J., February 19, 1898:

The valid objection to the evidence referred to in the first and second assignments of error was, not that it would tend to contradict or vary the contract by parol, but that proof of representations, though false, made by the plaintiff's agent after the contract was entered into, would not legitimately tend to establish the defense, which was deceit. This is obvious; for the defendant admitted that the contract was made on February 18th, and was in writing; the receipt which contained the essentials of a valid writing for the sale of real estate was delivered on that day; and the other witness, Aaron J. Cridland, testified, that, before the alleged conversation took place, he had been told by his sisters, the defendants, that they had purchased the house. Manifestly they did not purchase it on the faith of any representations made on February 25th, and the court committed no error in rejecting testimony which had no legitimate tendency to prove the defense, and could only tend to confuse and divert the minds of the jurors from the real issue. The first and second assignments are overruled.

An application for a new trial based on an allegation of after-discovered testimony is addressed to the sound discretion of the trial court, and only in clear cases of abuse of discretion, if ever, is the refusal of the application assignable for error: DeGrote v. DeGrote, 175 Pa. 50. The witness Kohn had testified on the trial, and had undertaken to describe the cracks in the building, but omitted to mention any cracks in the foundation walls. Very naturally the court might hesitate to grant a new trial for the purpose of permitting him to supplement his testimony. But we need not speculate as to the reasons which moved the action of the court. They are not on the record; and, even if the defendants had excepted to the refusal of the application, there is nothing in the case to take it out of the rule above stated. The third assignment is dismissed.

In commenting on the testimony of the witness Locker, the learned trial judge committed no error of which the defendants

have any just reason to complain. The effect of his comments, taken as a whole, was to lead the jury to the conclusion, not that the witness's version of the conversation was the more probable, but that his version did not differ in legal effect upon the question at issue from that of the defendants. "It seems to me," said the judge, "for the purposes of this case there is no real difference" (between "solid ground," the terms used by the plaintiff, and "solid foundation," the terms used by the defense) "because the defendants, if they were told that the foundations were solid, were entitled to believe, not only that those cellar walls were well built, but that they were well built and well placed upon a proper supporting foundation of earth, and if they were not so placed, if they were placed upon a foundation that was not safe, that would not support the weight put upon it, then there was not a solid foundation." There were other instructions to the same effect; and upon a careful perusal of the whole charge it will be seen that the case was sent to the jury upon the theory, so far, at least, as the judge expressed an opinion upon the question of fact, that the defendants' version of the representations was not contradicted in essential particulars by the testimony of the witness. Further comment upon the fourth assignment of error is unnecessary; it is overruled.

We find no error in the instructions complained of in the fifth assignment, even when disconnected from the rest of the charge. The theories of both parties and the main points in the evidence supporting them were adequately and impartially presented. Nor did the court, in summarizing the testimony of the witness McBride, misapprehend its effect, as will be seen from the following extract therefrom: "I mean to say it is impossible to talk about one house that is built tied in with other houses, to say that one house would show a crack when they have all gone down together; there is nothing to crack them, they cannot crack; they can fall apart, they can fall out in the street, but there is nothing there to hold them to make them crack. You cannot talk about one house that is built in with other houses. It is impossible for that house to show a crack, when they are all going down together. The house has gone, all the walls, the side walls, and back walls, and front walls."

It is not error for a trial judge to comment on the testimony

of a witness and to call attention to its inherent probability or improbability, provided he does it fairly and leaves the question of his credibility to the jury. Where particular instructions are not asked for and the complaint is that the charge was inadequate or onesided, the court will be reviewed on the general effect of the charge, and not upon sentences or paragraphs disconnected from the context which qualifies and explains them; if, as a whole, the charge was calculated to mislead, there is error in the record; if not, there is none: Irvin v. Kutruff, 152 Pa. 609; K. of P. v. Leadbeater, 2 Pa. Superior Ct. 461; Walton v. Caldwell, 5 Pa. Superior Ct. 143. This charge, whether viewed in respect of the instructions upon the law, or the review of the facts, was clear, adequate, and impartial.

The instruction complained of in the sixth assignment, taken in connection with what followed, was a full and clear statement of the controlling questions of fact in the case and was free from error. This seems too plain to permit discussion.

Judgment affirmed.