## Elizabeth Ginder *v.* Martin L. Bachman, Appellant.

*Evidence within party's control—Inference from nonproduction.*

Where evidence which properly would be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory reason, he fails to do so, the jury may draw an inference that it would be unfavorable to him.

*Charge of court—Attention called to traduction of character.*

Where parties traduce, practically, the character of another party by insinuations which they bring no evidence whatever to support, the jury have a right to take notice of it, and it is proper that the court should call the attention of the jury to it.

*Charge of court—Inadequacy—To be reviewed as a whole.*

Where the complaint is that the charge was inadequate or one-sided, and a particular error of law or misstatement of the evidence cannot be pointed out, the court will be reviewed on the general effect of the charge and not upon sentences or paragraphs disconnected from the context which qualifies or explains them; if as a whole, the charge was calculated to mislead there is error in the record; if not, there is none: McNeill v. Cridland, 6 Pa. Superior Ct. 428, and cases there cited.

Argued March 8, 1898. Appeal, No. 4, March T., 1898, by defendant, from judgment of C. P. Lebanon Co., Sept. T., 1895, No. 170, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass for breach of promise of marriage. Before SIMONTON, P. J., of the 12th judicial district, specially presiding.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* among others were (1) to portions of the judge's charge, as follows: " The plaintiff, as you remember, testifies that he did make a second promise sometime in 1890, I think, and that he said at that time that he had gotten his age. If he did make such a promise and did say that, and if he was of age at that time, then the promise would be binding. He denies that he made any promise at all at any time, and you will have to determine that question also, whether he did make any promise; but if he did and at the time he made the second promise he was of age, then the promise would be binding, and if you find that he said what the plaintiff testifies to, that he was of age at that time, that would be evidence for you to consider on the question of whether he was or not. He testifies that he was not of age and his father testifies to that, and they fix the date when he was born. They testify that he was born in 1871. If he was born at that time then he would not have been of age in 1890. He of course don't know when he was born except as he heard it from others. He is a competent witness to testify on that point, but a person's own testimony as to his age, of course, is based upon information and repute in the family that that is the time of his birth. That is all he knows about it. The father might know when he was born. The father might be mistaken as to when he was born. The mother would probably be more likely to know than the father. The mother is not here to testify and we do not know anything from her. A record made at the time or a family record kept would be very good evidence on a question of that kind. We have no such record produced here and we do not know whether there is such a record or not. We have no evidence as to whether or not this family keeps a record of the births and the time of the births of the children. There is nothing on that point. We have the testimony of the son, the defendant, and his father, and you are to consider it and give it such weight as you think proper, and you are to determine from that whether the defendant has satisfied you, by the weight of the evidence, that he was a minor at the time his last promise was made." The particular error complained of in this assignment being that the part of the charge quoted is one-sided and prejudicial to the defendant, in that it tends to belittle the evidence of the defendant on the subject of the defendant's age, while it pre-

sents the meager evidence of the plaintiff on the same subject in its strongest possible light. (6) In charging the jury as follows : " There is one thing that I think it is fair to speak of in connection with the testimony of this defendant and of his father. Questions were asked them with respect to the behavior of this plaintiff with another man and a name was mentioned and they said they knew nothing about it. That, I think, did not go to the credit, and is not very creditable for these defendants. They have brought no witness to substantiate anything of that kind. They have insinuated here that this girl was a girl of bad behavior; they have not offered a spark of evidence to substantiate that, and when parties traduce, practically, the character of another party by insinuations which they bring no evidence to support, the jury have a right to take notice of it, and it is proper that the court should call the attention of the jury to it. The defendant testified that his mother had seen certain things in that connection. The mother is not here to testify to it and it is not competent evidence as coming from him. If the mother saw those things and they intended to introduce that, the thing for them to do was to bring the witness who did see them, to bring her here to testify ; and the fact that they make those insinuations and mention the person with whom they say her ill conduct was, and mention the person who they say saw that conduct, and do not bring either of them here, is a matter that the jury have a right to think of. You are to give it whatever weight you think is right and proper. Our duty is simply to call your attention to it." (7) In charging the jury as follows : " You are to give it whatever weight you think is right and proper. Our duty is simply to call your attention to it."

*William M. Hain,* with him *Geo. B. Ulrich,* for appellant.—The court's comment as applied to the evidence offered by the defendant as to his age was unfair in that it was incomplete and inadequate. Family repute, in matters of pedigree, which includes the dates of family births, marriages and deaths, is of the highest importance : Greenleaf on Evidence, sec. 104 ; Pearce v. Kyzer, 16 Lea, 521 ; Pearce v. Kyzer, 57 Am. Rep. 240.

A charge which is correct in the abstract, but which is calcu-

lated to mislead the jury, is ground for reversal: Stall v. Meek, 70 Pa. 181.

Giving undue prominence to the evidence on one side of a case or of a fact in issue is error: Lerch v. Bard, 177 Pa. 197.

A charge whose tendency is to belittle and prejudice one side is error: Heydrick v. Hutchinson, 165 Pa. 208.

*Thos. H. Capp*, with him *J. M. Funck*, for appellee.—While a judge may not decide a disputed question of fact when the averments of the parties in its support or denial are sustained by reasonable proof, he may express his opinion respecting the evidence, and at times it is his duty to do so: Pierce v. Hamscher, 174 Pa. 73; Leibig v. Steiner, 94 Pa. 466; Bitner v. Bitner, 65 Pa. 347; Fredericks v. Railroad Co., 157 Pa. 103; Follmer v. McGinley, 146 Pa. 517.

The minuteness with which a trial judge in his charge to the jury shall discuss the evidence and the inferences therefrom is largely within his discretion: Borham v. Davis, 146 Pa. 72.

It is submitted that by no possible interpretation of the charge of the court can it be said that the jury was misled to the detriment of the defendant, or that his honor abused the discretion reposed in him under the law.

The defendant was responsible for his counsel's conduct of the case and unquestionably the jury had a right to consider and give effect to this very unfair method of attacking the plaintiff's character. This effort to malign the character of the plaintiff was in complete harmony with the defendant's previous treatment of the women he had betrayed.

OPINION BY RICE, P. J., October 10, 1898:

This was an action for breach of promise of marriage. One branch of the defense was, that the defendant was a minor at the time the original promise was made—a fact not disputed—and was still a minor in April, 1890, when, as alleged by the plaintiff and found by the jury, the promise was renewed. This question of fact, namely, the age of the defendant in April, 1890, was submitted to the jury, and was decided adversely to the defendant. The complaint which he makes in his first four assignments of error is, not that the trial judge did not adequately and correctly instruct the jury as to the

law, nor that in reviewing the evidence he did not call the jury's attention to all of it, but that his comments on the probative value of the testimony adduced on the one side and the other had a tendency to belittle that of the defendant and his father, while presenting the plaintiff's evidence on the same subject in the strongest possible light. This complaint is not well founded.

What the learned judge said as to the knowledge of the defendant of his age (third assignment) applied as well to his declaration to the plaintiff that he was of age, upon which she relied to establish the fact of his majority, as to his testimony upon the same subject. There is nothing in the charge from which a jury of ordinary intelligence could have received the impression that it was intended to apply to the latter more than to the former, and it is not to be presumed that they did from the fact that their verdict shows that they credited him when he made the declaration rather than when he testified. He was before them, and his appearance as to age was a circumstance to which they were not bound to shut their eyes, and which, for aught we know, may have been corroborative of the plaintiff's theory. At all events, the question of his credibility was for the jury, and there is no warrant for the supposition that in deciding it they were misled by what the learned judge said as to the sources of his knowledge.

What the learned judge said concerning the knowledge and recollection of a father, as compared with those of a mother, as to the age of their son—all other things being equal—was not only strictly accurate, but in a practical sense is generally true, as every one knows. It is a circumstance of some significance that the defendant's mother, who, of all persons, would be most likely to remember the exact date of his birth, was not called as a witness; nor was her absence explained. No legal presumption arose from the omission, but "where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory evidence, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact; not a presumption of law:" Hall v. Vanderpool, 156 Pa. 152; Steininger v. Hoch's Exr., 42 Pa. 432; Frick v. Barbour, 64 Pa. 120; Collins v.

Leafey, 23 W. N. C. 264; McHugh v. McHugh, 186 Pa. 197. In Pennsylvania this principle of evidence is not confined to the nonproduction of documentary proof in the possession or under the control of the party, but may be applied by the jury to the nonproduction by the party having the burden of proof, of witnesses who, presumably, are best informed on the subject of investigation, especially if their relations with such party are not hostile but friendly, and their bias, if any, would be in his favor. As already suggested, it is not a presumption of law, but an inference of fact which a jury may draw, and its strength or weakness will often depend upon the circumstances of the case. Perhaps the inference to be drawn in the present case was not very strong—and the judge did not say that it was—but it was a circumstance which the jury might properly take into consideration; therefore it was not improper for the court to mention it.

We fail to see how the defendant could have been prejudiced by the remarks of the court embraced in the fifth assignment. A family record would have been good evidence in a case of this kind, but, as it was not produced and there was no evidence that it existed, the jury were compelled to decide the question of fact upon the oral testimony. This is all that the judge said upon the subject. To construe it as a suggestion, that a family record would be better evidence of the age of a child than the positive testimony of the father, and that the defendant was in some fault in not producing it, would be to imply something that he did not say and that was not reasonably to be inferred from his language. Possibly the reference to family records as evidence of the date of the birth of a child was unnecessary, but, that being the only unfavorable criticism that can be made, it is obvious that no reversible error was committed.

In order to understand the pertinency of that portion of the charge embraced in the sixth assignment, it will be necessary to refer to what occurred on the trial.

Emma Kramer, a witness for the plaintiff, was asked in her examination in chief how the plaintiff had behaved herself while she lived at the Bachmans, and answered, "All right." On cross-examination she was asked this question, "Were you there at the time she was caught in the stable with Clayt. Peif-

fer?" To which she answered, "No sir, I didn't see her with any other boys at all." Again, in the direct examination of the defendant's father his counsel asked him this grossly leading question, "Mr. Bachman, do you know from your own knowledge that this girl was caught in the stable with that man Peiffer?" To which he answered, "Not of my own knowledge." It is impossible to construe these questions otherwise than as insinuations that the plaintiff had had immoral relations with the man Peiffer. The defendant might be excusable if he had intended, and made a bona fide attempt, to produce competent evidence to sustain the implied accusation. But he made no such attempt. He chose, instead, to asperse her character before the jury by giving hearsay testimony, when, taking his own assertion to be true, primary evidence of the fact was within his control. There was, therefore, not the semblance of an excuse for his attempt to besmirch the plaintiff's character in this manner. Being asked by his own counsel, "Do you know of the fact of her being caught in the stable with this young Peiffer?" he replied, "I didn't see her, but I know parties that did see her; my mother did see her and hireling we had." This recital of what occurred on the trial sufficiently shows, that the learned judge was fully warranted in saying, that "where parties traduce, practically, the character of another party by insinuations which they bring no evidence whatever to support the jury have a right to take notice of it, and it is proper that the court should call the attention of the jury to it." In the absence of request for special instructions, the extent to which the trial judge ought to go depends upon a variety of circumstances and must usually be left to his sound discretion guided by a proper sense of his responsibility for the conduct of the trial according to law. He did not go further in the present case than the circumstances warranted. The persistent attempt to influence a verdict by such irregular methods, if plainly intended to have that effect, is reprehensible; it moreover has a tendency to show that the party guilty of the misconduct is unwilling to rely on the truth of his cause, or is conscious that it is an unjust one. It may lack the moral turpitude of some of the acts discussed in McHugh v. McHugh, supra, but, unless excusable upon the plea of ignorance, we see no reason why the jury may not be permitted to draw similar unfavorable infer-

ences from it.   When it becomes thoroughly understood, that
a party may weaken his case, but cannot strengthen it, by insin-
uations against the character of his adversary or of his wit-
nesses without offering a spark of competent evidence to support
them, or anything in the case to warrant them, the occasions
for such just censure as the learned judge was called upon to
apply in the case at bar will be rare.

It is argued that, while " it was proper for the court to com-
ment upon the unsuccessful effort to show the unchastity of the
plaintiff," it was not proper to include the defendant's father
in the unfavorable comments.   We think this criticism is
founded on an erroneous interpretation of the charge.   If the
use of the word " defendants " instead of " defendant " was
not a mere slip of the tongue, which is probable, it is, at all
events, clear from the subject-matter of the comments that
they were not intended, and that the jury could not have been
led to suppose they were intended, to impute to the father re-
sponsibility for the unsubstantiated insinuations above referred
to.   This is all that need be said on that subject.   The remain-
ing objection to be noticed is, that the comments should have
been accompanied by proper instructions as to the legal effect
of what the defendant mildly calls his " unsuccessful effort to
show the unchastity of the plaintiff."   We think the defend-
ant did not suffer from the omission to go more at length into
that subject.   The judge had just been speaking of the issue
of fact to be decided and of the direct testimony on one side
and the other, and then, proceeding in the same line, he spoke
of this matter, as he might of any other circumstance that the
jury were authorized to take into consideration in deciding the
issue.   He did not say that it had any legal effect.   It would
have been error to instruct the jury that any presumption of
law would arise from it.   It was properly left to them to de-
termine what weight, if any, should be given to it.   In this
we discover no error.   Doubtless more specific instructions
would have been given if they had been asked.

It is to be observed, and this applies to all the assignments,
that there was no request for special instructions.   Where, in
such a case, the complaint is, that the charge was inadequate
or one-sided, and particular error of law, or misstatement of
the evidence, cannot be pointed out, the court will be reviewed

on the general effect of the charge, and not upon sentences or paragraphs disconnected from the context which qualifies and explains them; if, as a whole, the charge was calculated to mislead there is error in the record; if not, there is none: McNeile v. Cridland, 6 Pa. Superior Ct. 428, and cases there cited. The cases cited by the plaintiff's counsel, without referring to others that might be cited, abundantly show that the trial judge may express his opinion upon the weight and value of the evidence, and sometimes it is his duty to do so. When he does so fairly, and without misleading or controlling the jury in the disposition of the facts, there is no ground for reversal: Repsher v. Wattson, 17 Pa. 365; Bitner v. Bitner, 65 Pa. 347; Leibig v. Steiner, 94 Pa. 466; Borham v. Davis, 146 Pa. 72; Follmer v. McGinley, 146 Pa. 517; Fredericks v. R. R. Co., 157 Pa. 103; Price v. Hamscher, 174 Pa. 73. See also the pertinent remarks at the close of Judge WICKHAM's opinion in Walton v. Caldwell, 5 Pa. Superior Ct., 143. The court kept well within this rule in the present case.

All the assignments of error are overruled, and the judgments is affirmed.