## Runyeon *v.* Eaches, Appellant (No. 2).

*Partnership—Dissolution—Destruction of books—Presumption— Disbursements for personal account—Evidence—Sale price of real estate—Consideration expressed in deed.*

In a suit to settle the rights of former partners, upon the distribution of the partnership assets, where it appears that one of the partners used partnership funds to pay his own individual debts, and he is unable to prove that he repaid the amount, because he destroyed the records, the trial court should have surcharged him with the amount of the partnership funds thus improperly used.

Where a question arises as to the profit of the partnership from the sale of its real estate, the deed is prima facia evidence of the amount received. Failure of one of the partners, having further proof as to the real amount paid within his control, to produce it, raises a presumption against his contention that it was a smaller amount than the deed states. In the absence of substantial evidence that the amount stated was not correct, accounting should be had upon the basis of the recital in the deed.

Argued December 8, 1921. Appeal, No. 262, Oct. T., 1921, by defendant, from the decree of C. P. Berks Co., Equity Docket, 1917, No. 1219, in the case of George O.

272, (1922).] Statement of Facts—Opinion of the Court.

Runyeon v. Jesse E. Eaches. Before ORLADY, P. J., POR-
TER, HENDERSON, HEAD, TREXLER, KELLER and LINN. Re-
versed.

Bill in equity for dissolution of partnership and ac-
counting. Before ENDLICH, P. J.

The opinion of the Superior Court states the case.

The court below dismissed exceptions to the report of
the referee to the items in dispute upon this appeal, and
entered judgment for defendant as to other items in dis-
pute. This appeal is by defendant from so much of the
decree as was in favor of the plaintiff. (See preceding
case.)

*Errors assigned* were the decree of the court and its
rulings upon various exceptions.

*William Kerper Stevens,* for appellant.—The presump-
tion is against one to whose negligence or misconduct the
nonproduction of proper accounts is due: Frick v. Bar-
bour, 64 Pa. 121.

*Thos. J. Snyder,* of *Snyder, Zieber & Snyder,* and with
him *H. J. Dumn,* for appellee.

OPINION BY TREXLER, J., July 13, 1922:

There are three items in dispute in this appeal. The
first is a check dated December 9, 1902, payable to the
City of Reading for $1,598. Mr. Runyeon testified that
he knew nothing about it. Later it appeared that the
check was for the payment of city taxes of Runyeon &
Eaches, of George Runyeon individually, of his mother
and of the Reading Cold Storage & Ice Company. Ap-
pellee testified that the sum paid for the tax of the Read-
ing Cold Storage & Ice Company was returned to Run-
yeon & Eaches the same day, the amount being $1,436
but unfortunately for the appellee, the check stub shows
that the check from the Reading Cold Storage & Ice Com-

pany was not payable to the partnership of Runyeon & Eaches, but to George O. Runyeon, treasurer. He testifies that he endorsed the check on December 9th to the partnership and in corroboration of his statement claims that the bank book shows a deposit on the 10th of December of $1,603.70. He, however, admits that there is nothing about the deposit that would attract particular attention to it, in that it was larger than ordinary deposits. There was, therefore, nothing to indicate that the smaller sum was included in the larger. The taxes paid for the partners were charged in their personal pass books but we have no documentary evidence as to the repayment of the tax of the Reading Cold Storage & Ice Company. The payment of the tax of the Reading Cold Storage & Ice Company was not a proper use in the first place of the firm's money and its return to George O. Runyeon, Treasurer, complicates the transaction. Why this circuitous way of doing business was employed, is hard to explain. The only proof of the return of this sum is the mere word of the appellee. This, in the face of the check which is payable to him as treasurer, is not convincing. The entirely useless act of making the check payable to him when the money was intended for the partnership throws doubt upon the transaction. Had the books and papers of the firm not been destroyed, the whole thing could have been cleared up very readily. We think the same reasoning, which led the lower court to reject the items considered in the other appeal should have led to the same conclusion in regard to this. The appellee should be charged with the amount of $1,436 which is the amount of the city taxes of the Reading Cold Storage & Ice Company improperly paid out of the partnership funds of Runyeon & Eaches and which was not returned to the firm.

The second item is $2,200 which amount was withdrawn from the partnership assets March 20, 1902. We all agree that there were sufficient facts shown to war-

rant the conclusion reached by the referee that it was repaid in smaller amounts from time to time.

The third item arises out of the sale of the partnership real estate to the Reading Cold Storage & Ice Company. The property had been bought for $7,500 and according to the deed the sale was for $10,000. The difference represents profit that should be accounted for. The lower court, in the first place, surcharged Runyeon with this amount but subsequently changed his finding. We all think that he should have adhered to his original conclusion. The learned court, in his first opinion, stated that the lot appeared to have been bought for $7,000 but this was afterward changed by the plaintiff and his witnesses to $7,500 alleged to have been paid in cash but subsequently said to have been paid partly in stock in the Cold Storage Company. · Both statements as to facts are contradicted by the deed of conveyance itself which recited the consideration of $10,000 declared by the president of the cold storage company to have been put into the deed unthinkingly. The defendant's daughter and son-in-law testified that in conversation with the president of the cold storage company, he stated that the consideration had been $10,000 in cash. The defendant testified to like effect. His testimony was contradicted by the plaintiff. The learned trial judge commented on the subject as follows: "Whatever profit there was on the sale, if any, there is no real proof of its receipt by the firm. There was a notice to the plaintiff from the defendant to produce the cold storage company's books, papers, checks, etc., at the hearings before the referee, which notice, however, was not complied with, although the plaintiff was an officer of the cold storage company. It seems hardly credible that the cold storage company should have no books, records or memoranda which would throw light upon this question. The inference, therefore, from their nonproduction without explanation thereof would, in obedience to such cases as Steininger v. Hoch's Ex'r, 42 Pa. 432; Wills v. Hardcastle, 19 Pa.

Superior Ct. 525; Shannon v. Castner, 21 id. 294, necessarily make against the plaintiff's contention and therefore call for a conclusion adverse to him on this point, holding him liable at least to the extent of $2,500, the difference between $7,500 and $10,000, thus giving the plaintiff the benefit of the doubt as between the greater and the lesser sum alleged on his side to have been paid by the purchaser and perhaps by implication to have been received by the firm." In a second opinion the court, reversing this finding comments on the subject and states that he is led to a different result and in order to clearly present the matter involved, we must again quote his remarks: "The evidence concerning the price at which the real estate it refers to was sold consists of testimony involving admission by Guldin that the price was $10,-000 which is the consideration recited and receipted for in the deed of conveyance, the alleged admissions being denied on the other side. It is not accurate to say that such recitals are barren of any probative weight. They are at all events prima facie evidence of what they declare: Pryor v. Wood, 31 Pa. 142, 148; Baum v. Tonkin, 110 id. 569, 574; Ball v. Campbell, 134 id. 602, 606; Jeanes v. Hizer, 186 id. 523, 526; McPherran's Est. (No. 1), 212 id. 425, 429, and see Atkins v. Payne, 200 id. 557; Baeder's Est., 224 id. 452. But in this case they are explicitly contradicted, and so far as the defendant's testimony in support of them goes, it is materially weakened by the fact that he denied having received stock of the cold storage and ice company in part payment of the property sold,—a contention of fact which, in the presence of his own signature acknowledging the receipt of such stock, must, it would seem, under the circumstances be accepted as verity. His apparent want of recollection as to this matter may well throw doubt upon the correctness of his testimony in other particulars concerning this transaction, which would leave the fact to depend upon inconclusive evidence not, according to Brawdy v. Brawdy, 7 Pa. 157, 158-9, an adequate basis whereon

to found a decree in equity.   More especially must this be so when, as here, the presumption of plaintiff's good faith becomes an element in the decision.   A chancellor will not decree upon a doubtful case: Ibid.; Sparhawk v. Ry. Co., 54 Pa. 401, 426."

In this we think the court erred.   When we examine the testimony of Eaches, we find that he explicitly stated that the shares of the cold storage company were given to him in payment of a note which represented money which Runyeon had taken from the firm and this transaction had nothing to do with the sale of the real estate. Runyeon, himself, testified that the consideration of the real estate was paid by check.   There is therefore nothing to discredit Eaches in the matter and the reasons given by the learned court for the change of his opinion are not tenable, we are therefore constrained to charge Runyeon with $2,500, the profit made on the real estate.

The decree of the court below is reversed as to items herein indicated and the record is remitted with directions to enter a decree charging the appellant with the item December 9, 1902, $1,436 and with $2,500 profit on sale of real estate.   Appellee for costs.