## Kosmahl, Appellant, *v.* Emery.

224

Argued November 17, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Leon Rosenfield,* with him *Jacob B. Abrams,* for appellants.

*David F. Kaliner,* for appellee.

OPINION BY MR. JUSTICE BELL, January 4, 1955:

The wife-plaintiff was walking across Frankford Avenue on December 26, 1952, at about 5 o'clock P.M., with her two little daughters. She foolishly walked at a point 60 to 70 feet north of the pedestrian cross-walk at Cottman Street. Frankford Avenue is a two-way North-South street 58 feet wide, with double car tracks. There were no automobiles and so far as the evidence discloses, no trolleys moving at that point at the time plaintiff crossed the street. When she reached a point in the street approximately 5 to 6 feet from the East curbline, she turned southeast-wardly in order to walk between two automobiles which

were parked along the curb. There was a space of 2 feet between the automobiles. As she walked between the parked automobiles defendant's vehicle backed slowly into her, struck her and continued to move back about one foot. She was knocked down and her left ankle broken.

The jury returned a verdict for the defendant. Plaintiff filed a motion for a new trial alleging the unjust nature of the verdict and errors in the charge of the Court. Plaintiff took no specific or general exception to the charge of the Court. Plaintiff's motion for new trial was dismissed and judgment entered on the verdict in favor of the defendant.

We find no basic or fundamental error in the charge of the Court and we agree with the lower Court that the verdict of the jury was not capricious and was not against the weight of the evidence. This was solely a jury question and there being no abuse of discretion we will not reverse the order refusing a new trial.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

A reading of the Trial Court's charge in this case leads me to the conclusion that it was basically inadequate. With every intention to be fair the Trial Judge made unfortunate statements which were bound to work disadvantageously to the plaintiff's cause. At one point he said: "Of course, as she [the plaintiff] walked across the street, even using the very best care and caution that a person could use, and she twisted her ankle in some defective place in the street, and fell down on the street, she could not recover against anybody, but she could recover against the City of Philadelphia. But the City of Philadelphia, of course, is not involved in this case . . ."

The record reveals no evidence whatsoever that the plaintiff twisted her ankle in some defective place in the street. Nor did any one make any such assertion. The Judge's statement, therefore, could only introduce into the jury's mind the thought that there had been evidence of that character which possibly escaped their attention.

The testimony showed that Mrs. Kosmahl and her two children started across Frankford Avenue from the West to the East side but when only 5 or 6 feet from the East side Mrs. Kosmahl was struck down by a backing automobile. The defendant did not take the stand, nor did he call any witnesses.

The Judge said: "the plaintiff must prove by the fair preponderance of the evidence that the defendant was guilty of an act of negligence which was the proximate cause of plaintiff's injuries." Since the defendant did not present any evidence at all, what was meant by preponderance of evidence? Although the Judge never explained the meaning of preponderance of evidence, he charged three times on that feature of a negligence case. He also used the phrase "proximate cause" three times, but never defined it. "Proximate cause" is not a coin of such general circulation that it is recognizable by lay persons unfamiliar with legal phraseology.

The most serious fault in the Judge's charge however, was contained in the following excerpt: "Ordinarily if a person is a litigant in a case and is not called the plaintiff may presume that if that did happen their testimony would not benefit him; it might help the plaintiff; but that is inference. But Counsel for the defendant may if he so desires advise his client not to go on the stand. He may do that for several reasons; because he does not think the plaintiff has made out a legal case, or for many reasons beyond our

scope of knowledge. We do not know why he does it, but he is the captain of his ship and he decides what should be done in his case. That must not be held against the defendant, because his Counsel advised him not to go on the stand."

There is nothing in the record to justify the statement that counsel advised the defendant not to take the stand, and even if there were, that would not neutralize the natural suppositions which follow one's failure, in a civil case, to testify. It is only in criminal trials that juries are required by law not to draw adverse inferences from the fact that the defendant remains mute. In civil cases the inferences are decidedly to the contrary. Chief Justice MAXEY, in the case of *Peters v. Shear,* 351 Pa. 521, 525, wrote on this subject: "This Court said in Dommes v. Zuroski, 350 Pa. 206, . . . that the instruction given by the court below in that case that the defendant's failure to take the stand was 'a circumstance' that the jury could 'take into consideration in deciding what is the truth in the controversy' was proper. In Hall et al. v. Vanderpool, 156 Pa. 152, this Court, speaking through Justice MITCHELL, said: 'Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory evidence, he fails to do so, the jury may draw an inference that it would be unfavorable to him. It is an inference of fact; not a presumption of law.' This was quoted with approval by Judge RICE in Ginder v. Bachman, 8 Pa. Superior Ct. 405. In Arnold v. McKelvey, 253 Pa. 324, this court held in a negligence case: 'that reference by the counsel for the plaintiff in his closing address to the jury to the fact that the defendant's chauffeur, who was in the court room and had been identified during the trial, had not been called as a witness in the de-

fendant's behalf was within the limit of reasonable comment by counsel.' "

The last words uttered by the Judge before the jury retired were: "Members of the jury, let us admit then that the automobile backed into the plaintiff, but still you have to find out whether he was negligent at the time."

This remark was misleading. It suggested that backing a car into a pedestrian is a normal happening and only by some strange misadventure can amount to negligence. The law is quite definite that before one can back a car on a busy thoroughfare he must be certain that he has a clear track behind him, or, if people are in the vicinity, he must give warning of his intention.

All in all, the charge of the Court was a most unfortunate one and could well have misled the jury. In the interests of justice I would grant a new trial.