Argued April 12, 1939.
While the plaintiff was driving his father's truck on State Highway Route 219 northeastwardly from Garrett towards Berlin, in Somerset County, it collided with a train of the Baltimore and Ohio Railroad Company, at the point where its Berlin Branch crosses the state highway in Brothersvalley Township, near Mineral Springs and Buffalo Creek, respectively, and he was injured. He brought this action in trespass to recover damages for the personal injuries he sustained and recovered a verdict on which judgment was entered. Defendant appealed.
The highway and railroad do not cross at right angles, but at sharply acute angles, like a pair of scissors opened only a little way, somewhat in this manner:
[EDITORS' NOTE: SKETCH IS ELECTRONICALLY NON-TRANSFERRABLE.]
The accident occurred between 7 and 7:30 o'clock in the evening of February 10, 1937. It was dark, cold, stormy and blowing — some snow was flying, or was being blown. Plaintiff was driving a one and one-half ton Chevrolet truck, with a panel body, the cab closed up tight. His story and the stories of the witnesses for the railroad company are almost diametrically opposed, but as the jury evidently believed him, we *Page 390 
must accept his version[1] for the purposes of this appeal, and assume that the defendant company was negligent.
He was well acquainted with the surroundings and knew all about the railroad crossing. He was accustomed to passing it many times a week. He had chains on his rear wheels, and when a mile or a mile and a half out of Garrett one of these chains — a cross chain or side chain — started to hit the fender and hammered until he got near the bridge over Buffalo Creek, (82a), at the Garrett side, when it stopped hammering and he thought he might have lost it. When the truck was about twenty-five feet from the railroad crossing he stopped it and crawled out on the right side, went back to the wheel, reached down and felt on the tire to see if the chain was on and finding it there, walked back to the door of the cab of the truck and stood there. The railroad track to the right of the crossing ran almost in a line with the road, so all he had to do, as to it, was to look ahead. The railroad track to the left was obscured by the truck. He stood there and looked up the track to the right, and listened for anything that was on the track. He then got in the truck, put it in low gear, glanced to the right again — "You *Page 391 
need to turn your head only a little and you could see to the right" — found everything was clear, and then threw in the clutch and started the truck. Then he directed his attention to the railroad track to his left, and in order to see down it, he had to turn his head around and look back out of the window of his completely closed cab, and he kept looking in that directionuntil his truck was on the track, when he glanced to his right again and he saw there the reflection of his light on the train, which was almost on him.[2] He tried to turn to the left to escape it, but could not and his truck was pushed or dragged some distance before the train stopped. The train,[3] which was going south-westwardly from Berlin to Garrett, consisted of a caboose, locomotive tender, locomotive, facing backwards, twenty-four gondolas loaded with coal and two box cars. It was drifting, without power, at a speed of about fifteen miles per hour. This branch railroad was chiefly used to haul coal from mines near Berlin to Garrett, where it was transported on the main line of the railroad to its distribution points.
The ground where the road and the railroad track *Page 392 
crossed each other was level. There was nothing to prevent or interfere with the plaintiff stopping his truck just before entering on the track, rather than twenty-five feet back of it. His main purpose in stopping there was to see if he had lost his chain. His view of the track to his right, from where he stopped, he testified, was 200 feet,[4] due to a slight curve in the railroad. At a point four or five feet from the crossing, he admitted he could see "maybe, 250 to 300 feet" (37a). The civil engineer who testified as a witness for the defendant, said that his measurements showed that at a point 150 feet from the crossing you could see a man on the railroad track on the right for a distance of 209 feet; at 100 feet from the crossing, you could see for a distance of 248 feet; and at fifty feet from the crossing you could see up the track to the right for a distance of 380 feet; and that just before you reached the crossing, the view was still greater.
Stopping where he did, twenty-five feet from the crossing, plaintiff would have to travel at least forty-five feet in order that all of his truck might completely clear the railroad track and the overhang of the train. *Page 393 
In low gear this would probably take from six to ten seconds, during which time a train traveling fifteen miles an hour would cover from 130 to 220 feet. While it was necessary for him to look to his left before entering on the track, it was just as necessary that he look to the right again after the truck was moving and before going on the track: Kunicki v. Lehigh Valley R.Co., 321 Pa. 590, 591, 592, 185 A. 193; Kolich v. Monongahela Ry.Co., 303 Pa. 463, 467, 468, 154 A. 705; Petruskewicz v. ReadingCo., 318 Pa. 585, 586, 587, 179 A. 428; Ray v. Lehigh Valley R.Co., 321 Pa. 538, 184 A. 445; Hubert v. Reading Co., 129 Pa. Super. 200,202, 203, 195 A. 659. If he had done so, he would have seen the train, — for the track there was almost straight ahead —, and he could have stopped his truck in time.
His own testimony, in our opinion, convicts him of contributory negligence, because, (1) he should have stopped his truck nearer to the crossing than twenty-five feet away, in order to look and listen for a railroad train — the circumstance of a loose chain should not relieve him of performing this duty at a proper place; and (2) because, having listened and looked to the right when his truck was standing still, twenty-five feet away from the crossing, he should have looked again to his right after starting his truck, before venturing on to the railroad track. With the speed at which railroad trains may be expected to run, his looking to his right before he entered the cab, and when the truck was standing still twenty-five feet away from the track, would not be very helpful in escaping danger, unless he looked again in that direction after he had started his motor and begun moving, and before he entered on the track. This he wholly failed to do. He never even glanced to his right after the truck started moving until he "was on the track and the train was on him."
The assignments of error are sustained, the judgment is reversed and is now entered for the defendant.
[1] While his testimony as to the negligence of the defendant company was negative in character, that is, that the train had no
lights, the whistle was not blown, the bell was not rung, and no
signal of its approach to the crossing was given, his evidence, we think, was sufficiently definite to take the case out of the rule as to positive and negative testimony in railroad crossing accidents, laid down in Anspach v. Phila. Reading Ry. Co.,225 Pa. 528, 532, 74 A. 373; Newhard v. Penna. R.R. Co., 153 Pa. 417,426, 26 A. 105; Zotter v. L.V.R. Co., 280 Pa. 14, 18, 124 A. 284;Grimes v. Penna. R.R. Co., 289 Pa. 320, 323, 324, 137 A. 451;Lapinco v. Phila. Reading By. Co., 257 Pa. 344, 347,101 A. 767; Kubrak v. Penna. R.R. Co., 255 Pa. 379, 381, 100 A. 94;Haller v. Penna. R.R. Co., 306 Pa. 98, 110, 159 A. 10; Haskins v.Penna. R.R. Co., 293 Pa. 537, 541, 543, 143 A. 192; Mack v.Atlantic City R. Co., 92 Pa. Super. 455, 456, 457. As we dispose of the case on another ground it is not necessary to dwell upon it.
[2] On cross-examination he testified (pp. 29a, 30a): "Q. You first looked up the track, then started the car? A. It was started. Q. It wasn't moving? A. It wasn't moving, no. Q. You put it in motion? A. I meant the engine was running. Q. You put the car in motion then? A. After I turned my head to the right, I put it inlow gear and turned and started, about the same time I started out. Then you turned and looked the other way, down the road? A. I looked as I started out. Q. You say you had to turn your head considerable, because the track ran back in the direction you had come? A. Yes, sir. Q. And when you turned back that way, you were turned away from the direction in which the train was moving? A. Yes, Sir. Q. And the next you saw when you turned around, youwere practically on the train? A. I was on the track and thetrain was on me." (Italics supplied).
[3] The train crew consisted of a conductor, locomotive engineer, fireman and two brakemen. Their testimony was to the effect that on the front of the caboose there were three white lights and two green lights, that the light on the rear of the engine shone over
and through the windows of the caboose and lighted the track ahead; that the headlight of the engine illumined the side of the track; that the engineer blew the customary warning whistle on approaching the crossing and from a point 400 feet above the crossing continued to sound the whistle and ring the bell; that the conductor who was on the platform of the caboose at the front of the train also blew the air whistle which is customarily blown, when a train is running backwards. The engineer and the conductor also testified that they saw the light of plaintiff's truck approaching the crossing for a distance of 600 or 700 feet, and that because of this, they kept up the continuous signaling, and that plaintiff did not stop at all but ran into the front of the caboose.
[4] He first testified on direct examination, "I could see approximately about 300 feet" (p. 23a), but on cross-examination (p. 26a), he said, "You could see a train up there about two hundred feet." *Page 394