## Bayout *v.* Bayout, Appellant.

550

Argued April 16, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Herbert Fishbone,* with him *Harry A. Dower, Israel Krohn* and *Getz, Perkin & Twining,* for appellant.

*Joseph F. Fruhwirth, Jr.,* with him *James C. Lanshe,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 25, 1953:
A bill in equity was filed by Albert Bayout in which he prayed for reformation of a deed which conveyed title to premises at 442 Gordon Street, Allentown,

Pennsylvania to the defendant, his wife. Plaintiff also prayed that defendant be required to account for certain money and property which he alleged she removed from his house. The chancellor found that the defendant had procured the execution of the deed in question by fraud, ordered that the property be placed in the names of plaintiff and defendant, but refused to order the defendant to account for any property she allegedly removed from plaintiff's house. The court en banc affirmed the chancellor and in addition ordered the defendant to account for the proceeds received from renting the Gordon Street property from the date of the divorce of the parties, which occurred on February 13, 1950, subsequent to the time the bill was filed.

The parties to this action were married on August 3, 1940, and lived together as husband and wife until their separation on February 28, 1948. At the time of their marriage plaintiff owned 16 houses in the Borough of Northampton and was the real owner of the property at 442 Gordon Street, Allentown, although the legal title was held in the name of one Charles Yunas, who was acting as trustee for the plaintiff.

The deed in question, which conveyed title from Yunas to the defendant, was dated August 2, 1940 (the day immediately preceding the marriage), executed and acknowledged on January 7, 1941, and recorded on May 21, 1941. The name of the grantee appeared as Rose Divaio, the maiden name of the defendant. There was no evidence of erasures, corrections or deletions in the deed.

Plaintiff, a Syrian, was unable to read or write, and could speak English only with great difficulty. Most of his testimony was given through an interpreter. Defendant was of Italian origin but had an adequate command of the English language and was able to read and write.

The respective versions of the circumstances surrounding the drawing and execution of the deed are completely contradictory. Plaintiff's version was that subsequent to the marriage and after his wife had become pregnant he decided to transfer the title to the Gordon Street property from Yunas to himself and his wife as tenants by the entireties; that pursuant to this plan plaintiff, defendant, Yunas and the witnesses to the execution of the deed (Howard Assed and Herbert Sharfman), went to the office of a justice of the peace in Allentown; that he instructed both the justice of the peace and his wife that title was to be conveyed from Yunas to Albert and Rose Bayout as tenants by the entireties; that the justice of the peace advised the defendant that title could not be placed in her maiden name alone; that after the deed was executed defendant examined it and stated that it had been drawn and executed in accordance with plaintiff's instructions. To corroborate his version, plaintiff called as his witnesses Charles Yunas, the grantor, and Howard Assed, a witness to the execution of the deed, neither of whom were able to read or write. Both of plaintiff's witnesses had difficulty with the English language.

Defendant testified that plaintiff had promised to give her the house before their marriage; that the deed was drawn at that time; that the execution and acknowledgment of the deed was delayed until Yunas and Assed had a day off from their employment; that the deed was to be in the name of defendant alone; that she had never told her husband or anyone else that the names Albert and Rose Bayout appeared on the deed as grantees, as claimed by the plaintiff.

The chancellor accepted plaintiff's version and entered the order previously referred to.

Appellant contends (1) that plaintiff failed to produce the quality of evidence necessary to prove fraud, and (2) that plaintiff's failure to call as witnesses the justice of the peace who was present when the deed was executed and who took the acknowledgment, and an attorney who was a witness to the signature of the grantor on the deed creates an inference that the testimony of those witnesses would have been unfavorable to the plaintiff.

Our most recent statement on the quality of evidence necessary to prove fraud, is that a party who relies on fraud to establish a claim has the burden of proving the facts upon which the fraud is based by clear and convincing evidence: *Wagner v. Somerset County Memorial Park, Inc.,* 372 Pa. 338, 93 A. 2d 440. The evidence required is sometimes described as "clear, precise and indubitable". The quality of evidence in this regard is discussed at length by Justice, now Chief Justice STERN in *Stafford v. Reed, Admr.,* 363 Pa. 405, 410, 70 A. 2d 345, where he quotes from *Broida, to use v. Travelers Insurance Company,* 316 Pa. 444, at p. 448, 175 A. 492, as follows: ". . . 'the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.' . . .". While it is true that an appellate court will not disturb the basic findings of a chancellor as affirmed by the court en banc when such findings depend upon the credibility of witnesses, the question of whether the evidence relied upon by the successful party in the court below and accepted by the chancellor is legally sufficient to establish fraud is one of law and may be reviewed by this Court: *Staf-*

*ford v. Reed,* supra. It is therefore necessary to examine the evidence presented on behalf of the plaintiff to determine whether it is legally sufficient.

Plaintiff and Yunas both testified that plaintiff directed the justice of the peace to draft a deed in which both plaintiff and defendant were to be grantees. When Yunas was asked whether defendant said anything to the justice of the peace at that time, he answered that he did not remember. Although Yunas twice testified that he did not remember whether Mrs. Bayout said anything to the justice of the peace, he also testified that she asked the latter to put the house in her name. Assed testified seven times on direct examination that he had no recollection of whether plaintiff had directed the justice of the peace to make out the deed to both Mr. and Mrs. Bayout, and further testified that he did not know whether anything had been said about what names were on the deed after it had been executed. This testimony does not measure up to the standard to establish fraud. Neither Yunas nor Assed may be considered impartial witnesses. Both were old friends of the plaintiff and each had held legal title to the Gordon Street property as trustee for him. The facts to which they testified were not distinctly remembered nor narrated with exactitude. There was no explanation of why the deed was dated August 2, 1940, if it was drawn, as plaintiff and his witnesses testified, on January 7, 1941. Plaintiff and his two witnesses all testified that the justice of the peace stated that he could not make out the deed to the defendant in her maiden name, but apparently none of them was able to explain why, after the justice of the peace made that statement, the deed was finally executed and acknowledged in that form. None of the witnesses testified to any private conversations between the justice of the peace and the defendant. On the whole the account

of what occurred on the night of January 7, 1941, as related by the testimony by and on behalf of the plaintiff, was so vague and contradictory as to create doubt and uncertainty with respect to what actually took place at that time.

Much of the uncertainty and doubt concerning the execution of the deed and the events immediately preceding it could have been dispelled if either of the parties had called as witnesses Paul A. Lauster, the justice of the peace before whom the deed was executed and acknowledged, and Herbert Sharfman, plaintiff's then counsel, a member of the bar of Lehigh County, who was a witness to the execution of the deed. However, neither party saw fit to call these witnesses although there is nothing in the record to indicate that either of them was unavailable. Appellant contends that since the plaintiff failed to call these witnesses, there is an inference that their testimony would have been unfavorable to him. Appellee contends with equal vigor that the same inference applies to the defendant, since the testimony of these witnesses was not peculiarly within the control of the plaintiff. Appellee's contention overlooks the rule that as plaintiff he had the burden of proving fraud, and failure to produce informed and competent witnesses militates most strongly against the party having the burden of proof, and that this rule is not restricted to documentary evidence within the possession of one of the parties. This Court in *Steel et al. v. Snyder et ux.*, 295 Pa. 120, 128, 144 A. 912, quoted from *Ginder v. Bachman*, 8 Pa. Superior Ct. 405, 409, as follows: ". . . 'In Pennsylvania this principle of evidence is not confined to the nonproduction of documentary proof in the possession or under the control of the party, but may be applied by the jury to the nonproduction, by the party having the burden of proof, of witnesses who, presumably, are

best informed on the subject of investigation, especially if their relations with such party are not hostile but friendly, and their bias, if any, would be in his favor.' . . ." (citing cases). However, failure to produce an informed and competent witness permits only a factual inference and is not a presumption of law. Standing alone it would not warrant this Court in disturbing the order of the court below. But considered in connection with all of the evidence adduced by the plaintiff, the necessary conclusion is that plaintiff's evidence was not of the quality required to establish fraud.

The order of the court below is reversed and plaintiff's bill is dismissed at appellee's cost.