Commonwealth *v.* Tucker, Appellant.

Argued April 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before LAMOREE, P. J.

*John D. Ray,* with him *George O. Sewall,* and *Cauley & Birsic,* for appellant.

*Frank P. Lawley, Jr.,* Deputy Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY GUNTHER, J., June 12, 1958:

Edward E. Tucker, conducted a collection business in the City of New Castle registered under the name of Ideal Credit Adjusters. The Fictitious Names Docket states that defendant is the only person interested in the business.

Defendant was found guilty on a charge of violating the Act of June 24, 1939, P. L. 872, section 895, subsection g, which is as follows:

"It is unlawful for a collection agency to coerce or intimidate any debtor by delivering or mailing any paper or document simulating, or intending to simulate, a summons, warrant, writ, or court process as a means for the collection of a claim, or to threaten legal proceedings against any debtor; but nothing contained herein shall prohibit a collection agency from informing a debtor that if a claim is not paid, it will be re-

ferred to an attorney or attorneys at law for such action as he or they may deem necessary, without naming a specific attorney or attorneys; and nothing herein contained shall be construed to prohibit a magistrate from sending out notices to debtors before the institution of suit."

This appeal is from judgment and sentence imposed by the court. At the trial defendant demurred to the evidence and subsequently filed motions for a new trial and in arrest of judgment. Both motions were refused.

The evidence reveals that the case arose out of the following facts.

In 1954 John and Helen Polding purchased furniture on credit from Bolotin Furniture Store. On or about July 20, 1955, the Poldings received a letter from Ideal Credit Adjusters advising them that their account with the Bolotin Furniture Store had been placed with its firm for collection, and that unless the Poldings stopped at the office within five days it would be necessary to bring suit before a justice of the peace.

Sometime after this notice was received a levy was made on the furniture belonging to the Poldings. Thereupon, they agreed with the defendant, Tucker, to pay a stipulated sum each month on the balance due.

Mrs. Polding obtained a divorce from John Polding and married Charles McConnell. The McConnells moved to Akron, Ohio, taking with them the furniture purchased from Bolotin's Store.

On December 14, 1956, the defendant prepared an information against Mr. and Mrs. Polding charging them with unlawfully and feloniously taking, stealing and carrying away against the wishes of the Bolotin Furniture Store, the merchandise which had been pre-

viously purchased by Mr. and Mrs. Polding, upon which a balance was still due and owing. On June 9, 1957, Mr. and Mrs. McConnell were arrested in New Castle by a constable and a city policeman, and taken to the Lawrence County Jail. The arrest was made on information sworn to on February 12, 1957, before an alderman and signed by the defendant, Edward E. Tucker. The McConnells were held in jail for 18 hours and were released only after the amount of the unpaid balance was paid to the defendant. The alderman testified that he did not see the McConnells until after they had been released from the jail. Elgin McConnell, the father of Charles McConnell, testified that defendant informed him that the McConnells could be released from jail upon payment of the bill owed to the Bolotin Store.

Does the evidence introduced by the Commonwealth prove the commission of a violation of section 895 (g) of the Act of June 24, 1939, P. L. 872, 18 P. S. section 4895 (g)? The Act under which the defendant was tried and convicted defines the offense. It prohibits the coercion or intimidation of a debtor by delivering a court process as a means for collection of a debt.

The arrest and committal of the McConnells to the Lawrence County Jail for purposes of collecting a debt involved the McConnells in actual legal proceedings.

Defendant was the primary actor who moved to settle the delinquent account; he had the levy issued on the household goods and finally made out the information which led to the arrest. Is the evidence sufficient to prove that defendant's actions were for the sole purpose of collecting the claim?

The evidence reveals, (1) a letter dated July 20, 1955, addressed to the Poldings from Ideal Credit Adjusters as a preliminary step to the arrest, (2) the information charging the McConnells with larceny was

prepared by the defendant and the warrant for the arrest was served at the behest of the defendant.

Defendant contends that the evidence does not reveal that he acted as a collection agency, but only as an employe of the Bolotin Store. The Commonwealth did establish the registration of the fictitious name; that the agency sent a letter seeking to settle the account; and that the defendant received a commission on all sums collected for Bolotin's Store. The jury properly concluded that defendant carried on his own collection agency and committed the collection agency practices which the Act prohibited. Defendant in his argument for a new trial complains that the court committed certain reversible error.

The record clearly discloses that defendant was given every opportunity to call to the trial court's attention any errors of inaccuracy. The defendant, however, said nothing. Under these circumstances the defendant cannot now claim that the court committed reversible error. In *Commonwealth v. Barnak,* 357 Pa. 391, 420, 54 A. 2d 865 it was said:

"Where counsel for defendant fails to ask further and fuller instructions or for corrections in the charge, although opportunity is given him, he cannot, on appeal, complain of error in the statement of facts by the trial judge either on the ground of inaccuracy or insufficiency . . ."

Testimony pertaining to the events prior to the date of the arrest was relevant and admissible to show the circumstances surrounding the violation.

Judgment and sentence of the court are affirmed, and appellant is ordered to appear in the court below at such time as he may be there called and that he be by that court committed until he shall have complied with his sentence or any part of it which had not been served at the time this appeal was made a supersedeas.

DISSENTING OPINION BY WATKINS, J.:

The statement of the charge, verdict and the act under which the charge was brought are accurately set forth in the majority opinion. However, the evidence produced at the trial does not support the statement that the defendant at the time of the incident, forming the basis of the charge, was conducting a collection business in New Castle under the name of Ideal Credit Adjusters.

In the indictment the defendant was specifically charged that "on or about the 9th day of June . . . (1957) . . . unlawfully did by means of his collection agency coerce and intimidate certain debtors, namely: Charles W. McConnell and Helen McConnell, by delivering or serving, or simulating the service of a paper or document in the form of a warrant for arrest and attachment of the Persons of the debtor, as a means for the collection of a claim, and threatening legal proceedings, . . . ." Prior to trial by jury, defendant made a motion to quash the indictment which was refused.

To substantiate the charge, the Commonwealth developed the following evidence: In 1954, Jack Polding purchased certain furniture for himself and Helen Polding, his wife, from Bolotin's Furniture Store, a chain store, in New Castle, Pennsylvania. This furniture was purchased on credit and subsequently the payments due on the account were delinquent. On or about July 20, 1955, the Poldings received a letter from Ideal Credit Adjusters, signed by S. V. Ruckdeschel, advising them that their delinquent account had been placed with their firm for adjustment, and that unless the Poldings stopped in at the office within five days to adjust this matter, it will become necessary to force the issue by filing an affidavit of claim against them before a local alderman or justice of the peace. On October 31, 1955, Edward E. Tucker, defendant, filed

for a registration under the Fictitious Names Act, designating "Ideal Credit Adjusters" as the name under which the business of adjusting and collecting accounts, the conducting investigations and the making of adjustments of damage claims was to be conducted. It was stated in said registration that the business was not to be conducted through any agent and that the only party interested in said business was Edward E. Tucker. In 1954 or 1955, Bolotin's Furniture Store made an arrangement with defendant whereby he was to collect certain accounts. Sometime in 1956, defendant informed the store that other people had approached him to do some work for them and that, since he was devoting full time to the store accounts, he would not take on this additional work. He asked, therefore, to be placed on the store's payroll and paid as other employees. It was agreed that defendant be employed on a commission basis and that he would receive 50% of the collections made for and on behalf of the store. Withholdings were retained by store as in the case of other employees. He was given the title of manager of delinquent accounts and as such was authorized to settle accounts to the best of his ability, make substitution of good items for defective items on a customer's objection or complaint, and generally to institute actions on accounts in front of aldermen or justices of the peace. The representative of the store testified that the store had never dealt with Ideal Credit Adjusters to his knowledge.

Because of the delinquency of the Polding account, on June 15, 1956, a constable's levy was made upon the goods of Mr. and Mrs. Polding. The notice was served by a constable or deputy constable. It was stated that the action was brought by Bolotin's Furniture Store but signed by Edward E. Tucker, manager of delinquent accounts. As a result of that action, a promise

was obtained from the debtor to continue regular payments. Subsequently, the Poldings became divorced and Mrs. Polding remarried on Thanksgiving Day 1956 to Charles McConnell and moved to Akron, Ohio a few days later. The furniture purchased from Bolotin's was also moved by Mr. and Mrs. McConnell. On February 12, 1957, an information was sworn to by defendant, as manager of delinquent accounts of Bolotin's Furniture Store, charging Mr. and Mrs. McConnell with larceny. On June 9, 1957, they were arrested on this charge by a constable and two police officers in the City of New Castle about 2:00 A.M. while eating in a restaurant. They were lodged in jail but were released that same evening upon payment of the $130.00 balance due on the furniture taken and the charge was withdrawn and settled.

The only evidence offered was that presented by the Commonwealth. At the conclusion of the Commonwealth's case, defendant demurred to the evidence which was overruled. The jury returned a verdict of guilty. Motions for a new trial and in arrest of judgment were refused and the defendant was sentenced to pay a fine of $200.00, pay the costs of prosecution, and undergo imprisonment in the Lawrence County Jail for a period of one year. From this sentence, this appeal in which the sufficiency of the evidence, the charge of the court and the refusal to grant points for charge are challenged. We shall take these objections in order.

The definitions preceding the subsection of the Act in question define the term "collection agency" as "a person, other than an attorney at law duly admitted to practice in any court of record in this Commonwealth, who, as a business, enforces, collects, settles, adjusts, or compromises claims, or holds himself out, or offers, as a business, to enforce, collect, settle, adjust,

or compromise claims." With this definition in mind, in order to prove a violation under subsection (g) of the Act, supra, there must be proof (a) that the collection agency, as a business, collects, settles, adjusts or compromises claims or holds himself out or offers as a business to do so; (b) to coerce or intimidate a debtor; (c) the delivering or mailing of a paper or document simulating, or intending to simulate, a summons, warrant, writ or court process as a means of collection, and (d) threatening legal proceedings against a debtor. There is no question that the Commonwealth proved that the defendant registered under the Fictitious Names Act a collection agency known as Ideal Credit Adjusters. But has the Commonwealth met the burden of proving the other elements required in order to sustain this conviction?

The evidence produced by the Commonwealth proved that the defendant was an employee of Bolotin's Furniture Store; that he held the title of manager of delinquent accounts; that as such employee, he received his salary in terms of commission from which the usual withholdings of an employee were withdrawn; that the store did not deal with Ideal Credit Adjusters; that whatever actions were taken by defendant were in pursuance of authority received from his employer. There is no evidence whatever to show that defendant held himself out, as a business, to do the acts required under the statute. There was no evidence whatever to prove that the defendant at any time either delivered or mailed any paper or document either simulating or intending to simulate any summons, warrant, writ or court process or that he, as a business threatened any legal action against anyone. It is contended that the letter of July 20, 1955 may be constructed as a threat of legal process and is sufficient. However, the difficulty with this bit of evidence is that it was not signed

by the defendant and the Commonwealth made no effort to connect defendant with this letter in any manner whatever. As a matter of fact, when objection was made to the introduction of this letter into evidence, it should have been sustained because of the failure to connect defendant with its authorship or any connection therewith whatever. Furthermore, the evidence discloses that defendant became connected with Ideal Credit Adjusters on October 31, 1955.

It is urged that defendant was an independent contractor and that his employment with Bolotin's Furniture Store was merely a legal subterfuge. This inference, it is contended, is borne out by the fact that defendant received a commission on his collections and that he requested the title which was given to him. However, the Commonwealth's evidence discloses that he worked full time for the store and that other employees of the store also were on commission basis. Whatever collections made were made only on behalf of the store involved and we cannot interpret the criminal statute to prohibit an employer from hiring someone as an employee to collect its own accounts. The business of the employer was not that of collecting claims but of selling furniture. Whatever inferences may be drawn from facts cannot be based on suspicion or surmise but must be based upon the facts proved. *Commonwealth v. Giambrone,* 183 Pa. Superior Ct. 283, 130 A. 2d 254; *Commonwealth v. Gregory,* 183 Pa. Superior Ct. 53, 127 A. 2d 788.

Finally, it is urged that when the information on the larceny charge was lodged and Mr. and Mrs. McConnell arrested and their subsequent discharge upon payment of the balance due was sufficient to justify the finding that the defendant committed these acts solely for the purpose of collecting a claim and that this amounted to coercion. It was shown that the defend-

ant actually typed out the information at the alderman's office. What inference may be drawn from this fact? We know of no reason why the prosecuting witness should not fill out the information. Furthermore, the evidence clearly discloses why this was done. When the alderman was asked if he were able to type, he replied: "Some, yes, sir. Q. Well enough to type the information? A. Well, if they would give me about two weeks, I could have, yes." The testimony also shows that the warrant for arrest was first issued to the constable and a second warrant was directed to any peace officer. The actual arrest was made by the constable and two police officers of the City of New Castle. Defendant was not present when the arrest was made. It is urged that while the statute refers to a simulated summons or warrant, here the actual warrant for arrest was issued which is worse. This argument overlooks the fact, however, that the prohibited act is the mailing or delivery of a simulated document (or even the actual document) and there is no evidence of this whatever. Furthermore, in view of the fact that the furniture was moved into Ohio, without the knowledge or consent of the owner, the law does not prohibit the filing of a larceny charge. If the charge is not well founded, the prosecutor might subject himself to a charge of malicious use of process but not to the charge here involved. And finally, in view of the fact that the actual amount involved in the larceny charge was less than $200.00, the alderman was authorized to compromise and dismiss the charge. See Act of May 26, 1949, P. L. 1816, section 1, 19 P.S. 491.

Upon a review of the Commonwealth's evidence, we are compelled to conclude that it was insufficient to sustain the charge.

Complaint is also made to the charge of the court in that such charge failed to clarify the issues which

the jury was required to decide. We agree that on the crime here involved, the charge should have detailed the issues involved. As stated by our Supreme Court in *Commonwealth v. Malone,* 354 Pa. 180, 47 A. 2d 445: "When the issues in either a criminal or a civil case are not clarified in the judge's charge, the charge is of very little value in the administration of justice though it may contain no prejudicial error. A charge may be technically correct and yet be to the jury meaningless and useless." See also *Commonwealth v. Stewart,* 158 Pa. Superior Ct. 424, 44 A. 2d 857. We should also point out, however, that where the charge is inaccurate or insufficient and counsel, given the opportunity of suggesting corrections, fails to ask for corrections or additions, he cannot on appeal claim error. *Commonwealth v. Barnak,* 357 Pa. 391, 420, 54 A. 2d 865; *Commonwealth v. Cano,* 182 Pa. Superior Ct. 524, 128 A. 2d 358; *Commonwealth v. Reina,* 186 Pa. Superior Ct. 116, 140 A. 2d 633.

The final issue is that the court below refused to charge on certain points submitted. Defendant's second point was affirmed while his third, fourth and sixth points were refused. The second point was: "If you find that the defendant did not do the acts complained of as a business, then you must find the defendant not guilty." The third point was: "If you find that the defendant did the acts complained of as an employee of Bolotin's Furniture Stores, then you must find the defendant not guilty." The fourth point reads: "If you find that the defendant did not do the acts complained of as a collection agency, then you must find the defendant not guilty." And the sixth point was: "If you find that the defendant did the acts complained of as an employee of Bolotin's Furniture Stores and not as a Collection Agency, then you must find the defendant not guilty."

In view of affirming defendant's second point, we cannot see the reason for refusing the other points. A request for change should be granted unless misleading or contrary to law. These points should have been included in the charge as an aid in clarification of the issues. Not having been included in the charge, they should have been affirmed on counsel's request. The whole theory of guilt or innocence turned on the determination of these questions and they were proper requests.

Judgment and sentence should be reversed and the appellant discharged.

WRIGHT, J. joins in this dissent.