Harry J. DUNN

v.

**OVE SKOU REDERI A/S Ove Skou**

v.

**LUCKENBACH STEAMSHIP COMPANY.**

**Civ. A. No. 35045.**

United States District Court
E. D. Pennsylvania.

July 22, 1968.

Freedman, Borowsky & Lorry, Avram G. Adler, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Byrne, Robert Cox, Philadelphia, Pa., for third-party plaintiff.

Murphy, Veldorale & Weisbord, Joseph J. Murphy, Philadelphia, Pa., for Luckenbach Steamship Co., third-party defendant.

## OPINION

KRAFT, District Judge.

The plaintiff, a longshoreman, recovered a verdict against the defendant-shipowner for $10,000 in his personal injury action based upon claims of unseaworthiness and negligence. In the third-party indemnity action, the jury, in answer to special interrogatories[1],

---

1. "1(a) Was the defendant's (shipowner) ship unseaworthy on June 13, 1963? Answer "Yes" or "No". (If your answer to 1(a) is "Yes", then answer 1(b); if your answer to 1(a) is "No", then do not answer 1(b).)"
 "1(b) Was unseaworthiness of defendant's (shipowner) ship a proximate cause of injury to the plaintiff (Dunn) on June 13, 1963? Answer "Yes" or "No"."
 "2(a) Was defendant (shipowner) negligent on June 13, 1963? Answer "Yes" or "No".
 (If your answer to 2(a) is "Yes", then answer 2(b); if your answer to 2(a) is "No", then do not answer 2(b).)"
 "2(b) Was defendant's (shipowner) negligence a proximate cause of injury to the plaintiff (Dunn) on June 13, 1963? Answer "Yes" or "No"."
 "4(a) Did the third-party defendant (Luckenbach), acting through its officers and employees, (including the plaintiff, his fellow longshoremen and their foremen) breach the stevedoring company's contract with the shipowner to load

concluded that the stevedore breached its warranty of workmanlike service and that that breach proximately caused the injuries to the plaintiff. The jury also found that the shipowner had breached its contract with the stevedore.

Judgments were entered upon the special verdicts, in favor of the plaintiff and against the shipowner in the initial action and in favor of the stevedore and against the shipowner in the third-party action.

A motion for new trial, limited to the issue of damages, has been filed by the plaintiff. A motion has been filed by the shipowner for judgment notwithstanding the verdict or to reopen the judgment in favor of the stevedore for additional findings of fact under F.R. Civ.P. No. 49, or, alternatively, for a new trial.

Pursuant to express leave, granted by the Court to the plaintiff and the shipowner, only the particular portions of the record, including the full charge of the Court, which have been put in issue by the respective motions, have been transcribed.[2]

We consider initially the plaintiff's motion for new trial, which raises the following three alleged trial errors on the part of the trial judge: (1) the Court erred in excluding from evidence Plaintiff's Exhibit No. 8, a hospital record; (2) the Court's comment, in its charge, upon the failure of the plaintiff to produce witnesses who observed the plaintiff's alleged "blackout", while appearing in a *hiring* "shape up" on the waterfront, was not tempered by a similar comment upon the defendant's failure to produce such witnesses; (3) the Court erred in the admission into evidence of certain averments made by the plaintiff in an unrelated complaint, filed in a prior personal injury action, that he had then suffered a total permanent industrial and economic loss.

Plaintiff's Exhibit No. 8, a hospital record of the Albert Einstein Hospital, was excluded, on objection, from the jury's inspection because it contained, on one sheet of paper, a diagnosis made by an unidentified person as well as a statement purportedly made to that person by another person, likewise unidentified and having no connection with the hospital, that the plaintiff, had in fact, blacked out. The amount of the charges and the dates of the treatment set forth in the hospital record were admitted in evidence.

Plaintiff argues that the hospital record was admissible in its entirety, despite the fact that the history taken regarding the alleged blackout was given not by the plaintiff, but by an unidentified stranger, purportedly a longshoreman, who accompanied plaintiff to the hospital.

Plaintiff contends that the Federal Business Records Statute, 28 U.S.C.A. § 1732, gives a carte blanche approval to *all* entries on a record made in the regular course of business of the hospital and that every entry so admissible has probative value, the weight, but not the

the cargo onto the ship in a workmanlike manner, with reasonable safety to persons and property?" Answer "Yes" or "No".
(If your answer to 4(a) is "Yes", then answer 4(b); if your answer to 4(a) is "No", then do not answer 4(b).)"

"4(b) Did such breach of contract by the third-party defendant (Luckenbach) proximately cause injuries to the plaintiff, on June 13, 1963? Answer "Yes" or "No." *Only if* your answers to 4(a) and 4(b) are "Yes", then answer 5."

"5. Did the third-party plaintiff (shipowner), acting through its officers and employees, (including the mates and crew) breach any of the shipowner's obligations under its contract with the third-party defendant (Luckenbach)? Answer "Yes" or "No"."

2. Although the plaintiff never formally requested leave of Court prior to argument on the motion in accordance with Local Rule 31, we did grant such leave at argument.

admissibility, of which may be affected by the circumstances.

There was no question that the proffered record came from the files of the hospital, but no evidence was offered to establish that an authorized physician or intern, employed by the hospital, made the diagnosis recorded on the document. Moreover, there was no evidence to establish that the unidentified stranger had either the knowledge or the authority to make the statement set forth in the record. Dilley v. Chesapeake & Ohio Rwy. Co., 327 F.2d 249 (6 Cir. 1964).

 A record is not deemed admissible under 28 U.S.C.A. § 1732 unless it first be shown that an identified physician, in the regular course of his business as an employee of the hospital, made the record. Masterson v. Pennsylvania R. Co., 182 F.2d 793, 797 (3 Cir. 1950).

 We turn now to the second ground. It cannot be gainsaid that a federal judge is permitted to comment upon the evidence and express his opinion, provided he submits all matters of fact ultimately to the jury's consideration and informs them that they are not bound by his opinion.[3] Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L. Ed. 1321 (1933); United States v. Garber, 383 F.2d 448 (3 Cir. 1967); United States v. Stayback, 212 F.2d 313 (3 Cir. 1954).

 The plaintiff had the burden to prove that the claimed blackout in January of 1964 was attributable to the accident in suit, which occurred on June 13, 1963. Plaintiff claimed to have been in a "shape up" with many of his fellow-longshoremen, some of whom would have witnessed such an incident, but not one was called by the plaintiff to corroborate his testimony.

" * * * Failure to produce informed and competent witnesses militates most strongly against the party having the burden of proof * * *." Bayout v. Bayout, 373 Pa. 549, 555, 556, 96 A.2d 876 (1953)

Our comment in this regard was fair and warranted by the evidence.

 The final ground advanced by the plaintiff is devoid of merit. He put in issue and sought damages for a claimed diminution of future earning capacity; based upon his injuries arising from the accident of June 13, 1963. Defendant sought to impeach this claim by offering in evidence plaintiff's earlier claim of total economic and industrial loss, as set forth in an unrelated complaint filed by the plaintiff for personal injuries resulting from a prior injury in 1955. Defendant also offered evidence to show that plaintiff was working more hours and earning more income after the June 13, 1963 accident than before.

3. "There has been comment by counsel in argument about evidence not produced. Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation, by evidence, that party fails to produce it, the jury may draw an inference that that evidence if produced would be unfavorable to that party.

"Now, you have a right to inquire what evidence is there of the fact that he did in fact black out, except his own testimony. You have a right to consider that if he blacked out at the time he was down there for the shape-up, and had gotten a job, were there likely persons who observed him become unconscious and fall down? Have any of them been called before you to testify?

"My own recollection, and you will follow your own recollection, of course, is that no witness was called who ever actually saw the plaintiff black out. I think one doctor said he did see him, I believe it was Dr. Scanlon, when in the doctor's opinion he was in fact dizzy.

"But this is a seriously contested point between the parties, and it is one that you should give careful scrutiny because it is the foundation of the claim of loss of earning capacity from January to October of 1964, and as well is the basis for the plaintiff's claim of some diminution or interference with his earning capacity for the rest of his life."

The evidence was relevant and material to a fair determination of the plaintiff's claim of loss or diminution of future earning capacity. Our charge[4] discussed this issue only in light of the evidence and the respective contentions of the parties.

We are of the opinion that, under all the evidence, the damages recovered by the plaintiff were fair, reasonable and adequate and that no prejudicial error occurred which requires a new trial of the damage issue.

We turn our attention next to the motion of the third-party plaintiff. As noted earlier, the jury concluded that the stevedore's breach of its warranty of workmanlike service was a proximate cause of the plaintiff's injuries. However, the jury also answered affirmatively, interrogatory number 5, which read as follows:

"Did the third-party plaintiff (shipowner), acting through its officers and employees, (including the mates and crew) breach *any* of the shipowner's obligations under its contract with the third-party defendant (Luckenbach)?"[5] (emphasis ours)

The shipowner attacks only the jury's special finding in answer to interrogatory number 5. At this juncture it should be noted that the suggested interrogatories were submitted to all counsel for comment, suggestion or disapproval several days before they were actually submitted to the jury. The shipowner interposed no objection to nor sought any modification of the form or content of the interrogatories at any time during the trial or following our charge. Under the strictures of F.R.Civ.P. 49 and 51, the lack of any request for correction of the interrogatories or exception noted to their submission to the jury, constitutes a waiver of objection by a party.

The shipowner argues, however, that it was fundamental error to omit, in interrogatory number 5, an appropriate inquiry upon proximate cause; that all the other interrogatories, numbers 1, 2 and 4, which concerned the ship's unseaworthiness, shipowner's negligence and the stevedore's breach of contract, contained such an inquiry.

We think this argument has merit. There was evidence that the plaintiff was injured at work in a gondola car on the pier, while engaged in loading steel ingots aboard the ship "Rikke Skou". Five or six ingots had been loaded successfully when the ship's heavy-lift boom, then being operated by the stevedore, suddenly fell and some appurtenance thereof struck and injured the plaintiff.

There was evidence that the boom was rigged in a manner which was unusual and unfamiliar to the stevedore. With

---

4. "Also the plaintiff contends that the mere fact that he has been working and making more money now than he has ever made before isn't the sole test. And that is true. It is not the sole test. The question is what his earning capacity is and will be, and whether there is any loss, diminution or impairment of that earning capacity. And while his present or his recent rate of earnings may be higher, that is, of course, not necessarily certain guide to the future. But the law seeks to make whole anybody who suffers loss as the result of injury.

"On the other hand, defendant argues the fact that he has had a high rate of employment in hours and that his earnings have been greater than before shows that there is no real disability or impair-

ment of earning capacity, and in that context the defendant points out that in an earlier or earlier lawsuits resulting from the 1955 accident the claim was made on his behalf at that time that he had a total permanent industrial economic loss.

"But if you find that there was an impairment, determining what it is, reducing it to present worth, add that to the total in 5. If you don't find any or find that it wasn't proven, then there is nothing to be added on that score."

5. The language used in this interrogatory is identical with the suggested form of interrogatory on the question of the shipowner's obligations under its contract as set forth in Federal Jury Practice and Instructions, Civil and Criminal, Ch. 88, § 88.23 A p. 623, Mathes and Devitt.

knowledge of this condition, the stevedore commenced loading the ingots.

The evidence further disclosed that in operating the winches which controlled the boom, the stevedore failed to maintain on one of the winch drums that number of turns of cable sufficient to keep the boom from falling to a horizontal position. There was evidence that an operator was hired for the operation of each winch intended to be in use. The stevedore, however, permitted the winch operators to work in periodic shifts, so that one operator worked two winches simultaneously, while the other took a form of relief, such as leaving the vessel to get coffee. The stevedore made no effort to have each man operate only one winch or even to have the unengaged operator remain to watch for any sign of danger. The jury's affirmative answers to interrogatories numbers 4a and 4b were thus adequately supported.

The law is settled that a shipowner is entitled to indemnity from a stevedore for damages which the shipowner is obliged to pay for injuries to a longshoreman caused by an unseaworthy condition on its ship that is "brought into play" by the breach of the stevedore's warranty of workmanlike service. Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). That indemnity is denied only when the shipowner is guilty of "conduct on its part sufficient to preclude recovery." Weyerhauser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958).

The shipowner defers to and relies upon the competency of the stevedore company. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). "Recovery in indemnity for breach of the stevedore's warranty is based upon an agreement between the shipowner and stevedore and is not necessarily affected or defeated by the shipowner's negligence, whether active or passive, primary or secondary." Italia Soc. per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., 376 U.S. 315, 321, 84 S.Ct. 748, 752, 11 L.Ed.2d 732 (1964).

"The function of the doctrine of unseaworthiness and the corollary doctrine of indemnification is allocation of the losses caused by shipboard injuries to the enterprise, and within the several segments of the enterprise, to the institution or institutions most able to minimize the particular risk involved." Italia Soc. per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., id. at p. 323, note 10, 84 S.Ct. at p. 753.

In the charge to the jury upon the obligations of the shipowner under its contract with the stevedore, we omitted entirely instruction upon the issue of proximate causation. The shipowner was deprived by this unwitting omission of a complete submission to the jury of all the issues litigated in the third-party action.

It is fundamental to a fair resolution of the indemnity action that a jury determine whether the shipowner's breach of contract was a contributing cause of the plaintiff's injuries.

Accordingly, we conclude that justice requires that a partial new trial be granted in the third-party action on the limited issues of whether the plaintiff's injuries were caused, in part, by the shipowner's breach of contract. While it is apparent that such a partial new trial necessarily will require a re-hearing of much of the evidence involved in the entire indemnity action the jury's answers to interrogatories 4a and 4b will not be disturbed and will be dispositive of the issues thereby determined. Since we cannot discern from the jury's affirmative answer to interrogatory No. 5 what it found to be the shipowner's breach of contract we cannot tell another jury what was the specific contract breach and leave to them a determination of the causal relationship of that breach to the plain-

tiff's injuries. We can only submit anew the issue of any breach of contract by the shipowner and the causal relationship of that breach, if found, to the plaintiff's injuries. This posture of problem requires us to vacate and set aside the jury's answer to interrogatory No. 5.

"While the grant of a partial new trial is unusual, it is permitted under the Rules. See Rule 59(a) F.R.Civ.P., 'A new trial may be granted to all or any of the parties and on all *or part of* the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; * * *.' " Gallo v. Crocker, 321 F.2d 876, 879, 880 (5 Cir. 1963).

#### ORDER

Now, this 22nd day of July, 1968, it is ordered that

(1) the plaintiff's motion for partial new trial on the issue of damages be, and it is, denied;

(2) the third-party plaintiff's motion for judgment notwithstanding the verdict or to reopen the judgment in favor of third-party defendant for additional findings of fact under Rule 49 be, and it is, denied, without prejudice to the right of the third-party plaintiff to renew such motion upon the completion of the further proceedings in this matter;

(3) the judgment entered in the third-party action in favor of Luckenbach Steamship Company and against third-party plaintiff is vacated and set aside;

(4) the jury's answer to interrogatory No. 5 is vacated and set aside;

(5) the motion of third-party plaintiff for a partial new trial be, and it is, granted upon the limited issues of the causal relationship to the plaintiff's injuries of any breach of contract by third-party plaintiff.